UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No. 21-CR-667 (RCL) |
| MAHAILYA PRYER : | |
| : | |
| *Defendant.* : | |

### GOVERNMENT'S MEMORANDUM IN OPPOSITION TO MOTION FOR EARLY TERMINATION OF PROBATION AND MOTION FOR RESENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant Mahailya Pryer's Motion for Early Termination of Probation, ECF No. 77. Pryer seeks early termination based on *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023), which held that a defendant convicted of a single petty offense may not be sentenced both to imprisonment and to probation for that offense. *Id*. at 454. Pryer, like Little, received a split sentence of imprisonment and probation. Having already served the imprisonment component of her sentence, Pryer seeks to terminate the remaining probationary period. But early termination is not the appropriate remedy for an illegal sentence (i.e., one in excess of the statutorily authorized term). Instead, Pryer should be resentenced, and the Court should be permitted to recalibrate the punishment scheme, including, if appropriate, increasing Pryer's confinement period to reflect the statutory sentencing factors in 18 U.S.C. § 3553(a).

On January 6, 2021, while members of Congress gathered in the United States Capitol to certify the results of the 2020 presidential election, Pryer joined a large mob of rioters, (1) unlawfully entered the Capitol at the Rotunda Doors, the site of one of the most

consequential breaches of the Capitol on January 6, 2021, minutes after a violent breach where police officers were assaulted and the doors' glass panels were smashed; (2) demonstrated a lack of remorse and undermined her involvement in the riot; (3) deleted photographs and videos from her phone and social media accounts that depicted her involvement in the riot; (4) made clear through a post on her codefendant's Facebook account that she was proud of her and her fellow rioters' actions; (5) has a serious criminal history; and (6) has not expressed sincere remorse for her criminal conduct on January 6. *See* ECF No. 44 (Gov't Sentencing Memorandum).

For this conduct, Pryer pled guilty to one count of 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building. The Court sentenced Pryer to a "split sentence"—a term of imprisonment and a term of probation—under Title 18 U.S.C. § 3561(a)(3): Pryer was sentenced to 45 days of incarceration followed by a term of 3 years of probation, 60 hours of community service, $500 in restitution, and a $10 special assessment. ECF No. 53 (Judgment). Pryer was also ordered to participate in an in-patient drug treatment program. *Id.* She has served her 45-day prison term, which ended on Dec. 29, 2022, and she was released from her Court-ordered in-patient drug treatment program on or about January 27, 2023. She now asks this Court to terminate her three-year term of probation, having served less than one year of that term. The Court should deny this motion and instead resentence her.

I.      **Factual Background**

On January 6, 2021, Pryer and her co-defendant, Cara Hentschel, breached the U.S. Capitol building alongside a large, violent mob of rioters, which caused immense harm to the U.S. Capitol building and those who defended it, and which ultimately forced the halt

of the Joint Session of Congress held that day to certify the results of the 2020 Electoral College vote.[1] Pryer and Hentschel traveled from Missouri to Washington, D.C., where they entered onto Capitol grounds and approached the east side of the Capitol building, where they witnessed violent clashes between rioters and Capitol Police defending the building.

Between 2:25 p.m. and 3:30 p.m. in the afternoon of January 6, the Rotunda Doors on the east side of the Capitol building were breached three separate times by rioters. The breaches at the Rotunda Doors were some of the most consequential of the Capitol as hundreds of rioters entered the building at that location. Pryer and Hentschel were among the first rioters who entered during the second breach. They entered the doors at 2:43 p.m., five minutes after the second breach began, when shattered glass from the door was strewed on the floor, alarms were blaring, and chemical irritant spray was in the air. Pryer and Hentschel then traveled and remained with the crowd in the Rotunda before returning to the Rotunda Doors and exiting the building at approximately 2:51 p.m.



*Pryer and Hentschel after entering the Capitol building through the Rotunda Doors.*

---

[1] *See* ECF No. 44 (Gov't Sent. Memo.) at 3–19 for full recitation of facts relevant to Pryer's conduct on January 6, 2021.

3

In an interview with law enforcement following her guilty plea, Pryer admitted to seeing glass on the floor, chemical irritant in the air, and people smoking in the Capitol, but said that the rioters' presence was justified because they paid for that building and "it's the people's house." Pryer later acknowledged that it was not the proper time to be there. Pryer admitted she deleted statements and media from her phone and social media profiles before law enforcement could access them, but records from Hentschel's Facebook account revealed that Pryer wrote as part of a Facebook conversation on January 9, 2021:

> Hi I have told many people that yes antifa may have instigated it but it didn't take much to piss off already pissed of Patriots. I am not ashamed of what I have done. I am proud of it and I would do it again if it called for it and I will win it does call for it. We have to sacrifice in order to keep our freedom. It's not supposed to be like that but when times call for it we have to.

## II.     Procedural Background

On May 18, 2022, pursuant to a plea agreement, Pryer pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) (Parade, Demonstrate, or Picket in any of the Capitol Buildings).

As noted by the plea agreement and the U.S. Probation Office, Pryer faced up to six months of imprisonment and a fine of up to $5,000 for violating 40 U.S.C. § 5104(e)(2)(G). Because her offense was a Class B Misdemeanor, the Sentencing Guidelines did not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9. On September 30, 2022, Pryer was sentenced to 45 days of incarceration, well below the statutory maximum, followed by three years of probation.

Pryer completed her term of incarceration on December 27, 2022 and began her term of probation under the supervision of the U.S. Probation Office in the Western District of Missouri. On April 14, 2023, Probation filed a petition for an arrest warrant based on alleged violations by Pryer of her probation conditions. Probation cited eight conditions

violated, many on multiple occasions, including that Pryer used or possessed a controlled substance (methamphetamines) on at least four occasions since beginning supervision, which triggered mandatory revocation. 18 U.S.C. § 3565(b)(4). On April 27, 2023, Probation filed a supplement noting additional violations of her conditions of probation, including additional failed drug tests, and recommended that an arrest warrant be issued and an additional term of incarceration be imposed.

In response to this petition, the Court issued a warrant for Pryer's arrest on April 25, 2023 and she was taken into federal custody on May 1, 2023. On June 5, Pryer was released pending a final revocation hearing to an in-patient drug treatment program, then to the custody of her mother on June 25. On August 15, 2023, the U.S. Probation Office filed an additional petition for revocation, documenting new violations Pryer committed while awaiting her final revocation hearing. These included two additional positive drug tests for methamphetamine and fentanyl, suspected attempts to dilute USPO's drug tests, and other noncompliance. Dkt. 70.

On November 7, 2023, Pryer moved to terminate probation as an illegal sentence pursuant to *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023). Pryer's motion did not address the violations of her terms of probation and the subsequent probation proceedings.

**III.   This Court Should Resentence Pryer Instead Of Granting Early Termination Of Probation.**

    **A.   Where One Component Of A Defendant's Sentence Is Subsequently Determined To Be Illegal, The Court Should Resentence The Defendant To A Legal Term.**

After considering the statutory sentencing factors in 18 U.S.C. § 3553(a), the Court sentenced Pryer to a split sentence, providing a mix of incarceration and supervision

appropriate to her offense and circumstances. The components of this dual sentence were interdependent, and both were vital to the Court's overarching plan for Defendant.

But *Little* invalidated this split sentence regime, unraveling the Court's intentionally tailored sentencing scheme. Post-*Little*, a sentencing court must choose either incarceration or probation as a penalty for a single § 5104 violation; a sentence that includes both incarceration and probation exceeds the statutory maximum authorized sentence. Thus, the split sentence the Court imposed on Pryer is illegal and must be corrected. *See e.g.*, *United States v. Godoy*, 706 F.3d 493, 495 (D.C. Cir. 2013) (the imposition of a sentence that exceeds the statutory maximum is illegal).

Pryer does not ask this Court to correct her illegal sentence, seeking instead to end it early pursuant to 18 U.S.C. § 3564(c).[2] But where the court has imposed an illegal sentence, the remedy is not to automatically terminate that sentence, thereby nullifying the Court's carefully crafted punishment. Rather, when faced with an invalid sentencing scheme, the sentencing court is best situated to determine the effect of this invalidation and whether the sentence should be adjusted to ensure that it meets the goals of the overarching scheme and is consistent with the § 3553(a) factors.

This situation is not uncommon, and courts are well versed in resentencing defendants for a host of reasons, including after a successful appeal or motion to vacate, even if the resulting resentencing increases the penalty. *See Hayes v. United States*, 249

---

[2] A court has discretion to terminate a term of probation imposed in a misdemeanor case at any time "if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). Mere compliance with the conditions of supervision does not warrant early termination. *See e.g.*, *United States v. Wesley*, 311 F. Supp. 3d 77, 81–82 (D.D.C. 2018) ("even perfect compliance with conditions of release does not qualify as 'exceptionally good behavior' warranting early termination").

F.2d 516, 517–18 (D.C. Cir. 1957) ("sentence which does not conform with the applicable statute may be corrected though defendant has not appealed from the judgment embodying the invalid sentence, has begun to serve it, and steps to correct it are not initiated by him but by the Government"). *See also United States v. DiFrancesco*, 449 U.S. 117, 132 (1980) (sentence may be increased after a successful government appeal); *Bozza v. United States*, 330 U.S. 160, 166–67 (1947) (sentence may be increased to include a mandatory fine where the fine was omitted from original sentence); *Davenport v. United States*, 353 F.2d 882, 884 (D.C. Cir. 1965) ("defendant who successfully attacks an invalid sentence can 'be validly resentenced though the resentence increased the punishment'") (quoting *Hayes*, 249 F.2d at 517); *Burns v. United States*, 552 F.2d 828, 831 (8th Cir.1977) ("When the first sentence does not conform to the applicable penalty statute ... it is a nullity, and, as such, may be corrected ... so as to comply with the statute, even though service of the sentence originally imposed has begun and the correct sentence is regarded to be more onerous.").

The Court's authority to adjust a sentencing scheme where one portion is invalidated acknowledges that a sentencing court necessarily choses a mix of available penalties such that the resulting sentence adequately reflects the crime and the statutory sentencing factors. *See* 18 U.S.C. § 3553(a)(3) (instructing sentencing courts when "determining the particular sentence to be imposed," to "consider ... the kinds of sentences available."). If later review reveals that the sentence does not conform to statutory requirements, the sentence must be corrected to bring it within Congressional authorization. *See United States v. Rosario*, 386 F.3d 166, 170 (2d Cir. 2004) (explaining the circumstances under which a sentence can be increased even after service of the sentence had begun); *Bohn*, 959 F.2d at 394-95 ("an increase in one component of a

sentence, imposed following a successful challenge to another component of a sentence, is intimately related to the exercise of a sentencing judge's authority to select an appropriate sentence"). The dissenting judge in *Little* acknowledged this law as applied to invalidated split sentences:

> Following vacatur of the sentence on remand, it appears that the district judge could impose a sentence of imprisonment or probation, and that he would not be limited to the 90 days or three years that were imposed before if he concluded that either a longer prison or probationary term were required to meet the goals of 18 U.S.C. § 3551.

*United States v. Little*, 78 F.4th 453, 469 n.3 (D.C. Cir. 2023) (Wilkins, J., dissenting) (citing *Davenport*, 353 F.2d at 884 and *Hayes*, 249 F.2d at 517).[3]

The familiar sentencing package doctrine reflects this understanding that the ultimate sentence imposed in a particular case represents the court's determination that the punishment mix fits the crime, the offender, and the statutory sentencing factors. *See United States v. Townshend*, 178 F.3d 558, 570 (D.C. Cir. 1999) (noting that a multicount sentence "was properly viewed as a package," meaning that the "sentences were, in essence, 'one unified term of imprisonment'"). So when a defendant is found guilty on a multi-count indictment, the resulting sentences are generally viewed as a "package" such that a "successful attack by a defendant on some" counts of conviction may necessitate resentencing on all remaining counts to ensure that the new aggregate sentence is "adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Greenlaw v. United States*, 554 U.S. 237, 253 (2008). Revisiting all the components of an original sentencing package after

---

[3] The *Little* majority vacated and remanded for resentencing without specifying the scope of the remand. *See Little*, 78 F.4th at 461.

one component is invalidated "ensures that the sentence will suit not merely the offense but the individual defendant." *Greenlaw*, 554 U.S. at 254 (quotations omitted).

    The same principle applies where a particular component of a sentence on a single count is later determined to be improper—the sentencing court can adjust the sentence to correct the illegality, even if this means increasing the penalty, "so as to achieve the intended 'aggregate punitive effect of [the] sentence.'" *United States v. Versaglio*, 85 F.3d 943, 949 (2d Cir. 1996) (permitting increased fine after imprisonment component vacated; explaining that a sentencing court may revise upward one component of sentence after another related component was invalidated so long as "aggregate sentence was not so severe as to create an undue risk of deterring others from subsequent challenges to sentence components that might be unlawful") (citation and quotation omitted), *modified on other grounds*, 96 F.3d 637 (2d Cir. 1996). *See also Hayes*, 249 F.2d at 517–18 ("a sentence which does not conform with the applicable statute [because it is below the statutory minimum] may be corrected though defendant ... has begun to serve it"); *Rosario*, 386 F.3d at 170 (detailing circumstances in which a sentence can be increased even after service of the sentence has begun); *United States v. Bohn*, 959 F.2d 389, 394–95 (2d Cir. 1992) (permitting imposition of prison sentence after amount of fine reduced on appeal); *United States v. Young*, 932 F.2d 1035, 1037–38 (2d Cir. 1991) (permitting imposition of fine after restitution order vacated); *See also Christopher v. United States*, 415 A.2d 803 (D.C. 1980) (sentencing court could *sua sponte* correct illegal split sentence by eliminating probation portion and imposing period at incarceration greater than one originally ordered, even though prisoner had begun to serve illegal sentence).

Here, the components of Pryer's sentence are inextricably intertwined, and reducing the term of probation will undo the sentencing matrix. The Court imposed a period of confinement well below the statutory maximum, knowing that a significant period of supervision in the form of probation would follow. The sentence was fashioned holistically, and the probationary term was a companion to, and offset for, the lenient term of imprisonment Pryer received. At resentencing, the court should have the option to adjust the sentence to achieve the intended "aggregate punitive effect." *Versaglio*, 85 F.3d at 949. *See also United States v. Johnson*, 378 F.3d 230, 241 (2d. Cir. 2004) ("[O]ur remand to correct a sentencing error undid a 'knot of calculation,' and hence merited de novo resentencing").

### B.     Resentencing Pryer Would Not Violate Double Jeopardy.

The Double Jeopardy Clause does not bar resentencing, or even the imposition of a greater sentence at resentencing, where a defendant has no legitimate expectation of finality in the sentence originally imposed. *See United States v. Fogel*, 829 F.2d 77, 87 (D.C. Cir. 1987) ("If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence."); *see also United States v. DiFrancesco*, 449 U.S. 117, 135, 137 (1980) (noting that "a sentence does not have the qualities of constitutional finality that attend an acquittal" and that "the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase"). So "the application of the double jeopardy clause to an increase in a sentence turns on the extent and legitimacy of a defendant's expectation of finality in that sentence." *Fogel*, 829 F.2d at 87.

10

Circumstances that undermine a defendant's legitimate expectation of finality include the imposition of a sentence that could not lawfully exist as imposed and a defendant's challenge to that sentence. *Id.*[4]

A defendant who successfully attacks an unlawful sentence, as here, therefore has no legitimate expectation of finality, and at resentencing, the court may recalibrate the appropriate punishment mix. *See Hayes*, 249 F.2d at 517 ("It also seems clear that, if the sentence were invalid and defendant successfully attacked it, he could be validly resentenced though the resentence increased the punishment. The defendant in such case is held to have waived his protection against double jeopardy."); *see also, e.g.*, *United States v. Townshend*, 178 F.3d 558, 570 (D.C. Cir. 1999) ("we join the other circuits which have addressed this question in concluding that even where the term originally allocated to the remaining counts of a package has been served, a defendant can have no legitimate expectation of finality regarding the sentence previously allocated to certain counts while simultaneously challenging his sentence on other counts of the package"); *United States v. Brown*, 26 F.4th 48, 62 (1st Cir. 2022) ("'[w]hen a defendant elects to challenge one part of a sentencing package whose constituent parts are truly interdependent,' reconstituting 'the entire sentencing package does not constitute a double jeopardy violation'") (citing *United States v. Mata*, 133 F.3d 200, 202 (2d Cir. 1998)). So the Double Jeopardy Clause provides no basis for circumventing this Court's responsibility to impose a valid sentence

---

[4] The increase in Fogel's sentence violated double jeopardy because the sentence was *not* unlawful, and the defendant had *not* challenged it. *Id*. at 88-89 (noting that original sentence was not impermissible— "[t]he only defect in the sentence [was] that the district court failed to state that it was suspending sentence" —and the defendant had not appealed either his conviction or sentence).

that reflects the statutory sentencing factors and the Court's original sentencing intent after the initially imposed split sentence was invalidated.

Pryer cites a pair of Supreme Court cases—*Ex parte Lange*, 85 U.S. 163 (1873), and *In re Bradley*, 318 U.S. 50 (1943)—for the proposition that a defendant cannot be punished for the same offense twice, but these cases have been limited to their context and resentencing here is entirely consistent with their holdings. While *Lange* and *Bradley* involved defendants sentenced to a fine *and* imprisonment under statutes that permitted either a fine *or* imprisonment, the similarities end there. Indeed, in each of those cases, the Supreme Court held that defendants could not be resentenced to a term of imprisonment after defendants paid the imposed fine in full. In *Lange*, the Supreme Court held that the defendant was entitled to immediate release because he had already paid the statutory maximum fine in full and that resentencing him to the alternate punishment of imprisonment would "punish[] [him] twice for the same thing." 85 U.S. at 175. Similarly, in *Bradley*, the Supreme Court held that the defendant "[wa]s entitled to be freed of further restraint" after paying the fine in full because "one valid alternative provision of the original sentence ha[d] been satisfied ." 318 U.S. at 52.

*Lange* and *Bradley* stand for the unassailable but narrow proposition that "a defendant may not receive a greater sentence than the legislature has authorized." *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980) (recognizing the narrowness of *Lange*'s holding). And the full payment of the fine in those cases meant that the defendants had already suffered one of two authorized alternative penalties such that no greater punishment could be imposed. But the *Lange/Bradley* rule is a narrow exception to the general law discussed above that "[c]orrection of a sentence can occur even if service of

12

the sentence has begun …[and] even if the correct sentence may be more onerous to the defendant than the original." *United States v. Holmes*, 822 F.2d 481, 498 (5th Cir. 1987) (cited cases omitted); *see also Jones v. Thomas*, 491 U.S. 376, 384 (1989) (rejecting "[s]trict application of *Bradley*"). Indeed, the *Lange/Bradley* rule applies only where the alternative penalty imposes the maximum authorized sentence and is satisfied in full:

> The *Bradley* cases stand apart from this general rule, however. The contempt statute authorizes only a fine or imprisonment, and the full payment of a fine satisfies one lawful alternative sentence. Sentences involving imprisonment not yet fully served or a term of imprisonment below the maximum authorized by an offense statute are not analogous, nor are cases in which a defendant appeals a dual sentence before satisfying either prong. What differentiates the *Bradley*-type case from these other cases is that a *Bradley* defendant who has paid his fine has suffered the maximum sentence authorized by the statutes.

*Holmes*, 822 F.2d at 489-90; *see also id.* at 490 n.30 (distinguishing cases that involved resentencing "after sentences that were below the maximum authorized by offense statutes, or after a defendant … challenged a sentence but had not fully satisfied a sentence as great as the law allows").

The limitations on the applicability of *Lange*/*Bradley* are widely recognized. For example, in *Versaglio*, 85 F.3d at 948, the Second Circuit held that a defendant who paid a fine and thereby gained insulation from an alternative sentence of imprisonment nevertheless could receive an increased fine on remand. The defendant in *Versaglio* had been convicted of contempt and had been sentenced to a 21-month term of imprisonment *and* a $25,000 fine—in violation of the contempt statute which allow either imprisonment *or* a fine. *Id.* Shortly after sentencing, the defendant paid the fine in full. *Id*. The Second Circuit held that the term of imprisonment had to be vacated because the defendant had paid the fine in full. *Id.* But recognizing that the fine and imprisonment term were

13

intertwined, the court held that the fine amount could be revised to account for the invalidated imprisonment component. *Id.* The Second Circuit noted that "[n]o issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the amount of a fine in light of the unavailability of imprisonment." *Id.* Accordingly, the court vacated the prison sentence and remanded the fine component of the sentence to allow the district court the opportunity to revise the amount of the fine. *Id*. at 949 ("In selecting $25,000 as the appropriate fine, we think it reasonable to assume that Judge Korman had in mind the aggregate punitive effect of his sentence. Now that the 21-month term of imprisonment is being set aside, the sentencing judge should have the option of considering whether to make an upward adjustment in the amount of the fine.").

Similarly, in *United States v. Lominac*, 144 F.3d 308 (4th Cir. 1998), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000), the Fourth Circuit found that "*Bradley* does not bar resentencing" where a defendant was sentenced to both imprisonment and supervised release even though the applicable statute only authorized the imposition of one of these forms of punishment. The Fourth Circuit's reasoning focused on another means of distinguishing *Lange*/*Bradley* that is also applicable here. Specifically, the Fourth Circuit noted that while "'the alternative sentences in *Bradley*'" of imprisonment and a fine "'were of a different type' and it simply was not 'possible to credit a fine against time in prison,'" "it is possible to credit [defendant's] time served on supervised release against any time to be served in prison." *Id.* at 318 (quoting *Jones v. Thomas*, 491 U.S. 376, 384 (1989)). In other words, "[u]nlike the monetary sanction of a fine, which cannot be converted into an equivalent temporal sanction, [defendant's] term

14

of supervised release restrained his liberty for a known period of time that can be credited against any future sentence of imprisonment." *Id.*

Here, Pryer's case is not controlled by *Lange*/*Bradley* for at least two distinct reasons. First, this Court did not impose, and Pryer has not served, the statutory maximum term of imprisonment. Rather, in sentencing Pryer to both imprisonment and probation, the Court intentionally crafted a dual sentencing scheme suited to Pryer's specific offense and circumstances in which each component weighed against the other and played an important part in the overall plan. Thus, the Court "should have the option of considering whether to make an upward adjustment in the" term of imprisonment at resentencing. *Versaglio*, 85 F.3d at 948; *see also Holmes*, 822 F.2d at 489-90. Second, unlike *Lange* and *Bradley*, the alterative sentences here do not involve penalties that are impossible to credit against each other. Rather, as in *Lominac*, any time previously served in prison and any time previously served on probation could and should be credited against any future sentence of imprisonment imposed at resentencing. 144 F.3d at 318.

## IV.    The Court Should Resentence Pryer Under the Section 3553(a) Factors.

The dual sentence of imprisonment and probation the Court imposed reflects a conscious decision, after considering the § 3553(a) factors, to ensure overall punishment suitable to the crime and Pryer's specific circumstances. Invalidation of this overarching scheme necessitates that the Court further consider the appropriate punishment at resentencing. Sentencing is not "a game in which a wrong move by a judge means immunity for the prisoner." *Bozza*, 330 U.S. at 166-67. The Court must be permitted to recalibrate the punishment scheme through resentencing—including by potentially

increasing Pryer's confinement period[5]—to reflect the statutory sentencing factors in 18 U.S.C. § 3553(a). In resentencing Pryer, the Court should consider not only the section 3553(a) factors as they applied at the time of sentencing, *see* ECF No. 44 (Gov't Sent. Memo.) at 20, but also Pryer's post-sentencing actions. The Court can consider the need for specific deterrence and the need to promote respect for the law in light of this conduct, for instance. Pryer clearly flaunted the conditions imposed on her during probation, prompting her Probation Officer to state that "Pryer presents as if she is intentionally committing violations and not being truthful because she does not believe there are consequences." April 4, 2023 U.S. Probation Office Petition at 7. Pryer began violating her conditions of probation within two weeks of her release from incarceration and in-patient drug treatment. Probation's initial April 4, 2023 petition to revoke her probation cited eight

---

[5] Should the Court resentence Pryer to additional incarceration, she should receive some credit for time already served on probation. *See United States v. Martin*, 363 F.3d 25, 37-38 (1st Cir. 2004) (holding that to avoid double jeopardy concerns, a defendant must receive credit for time already served on an erroneous sentence of probation against a subsequent sentence of imprisonment). But because probation is a less restrictive penalty than incarceration, the offset need not be "a day–to–day offset." *Id*. at 39 (reasoning that a sentence on remand that reduced imprisonment by one day for each day that the defendant served on probation would be too lenient to represent the punishment that Congress intended; conversely, a sentence on remand that gave no credit for time served on probation and imposed the maximum term of imprisonment would exceed the maximum punishment allowed by statute). *See also United States v. Lominac*, 144 F.3d 308 (4th Cir. 1998), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000) (holding that where a defendant was sentenced to both imprisonment and supervised release even though the applicable statute only authorized the imposition of one of these forms of punishment, the defendant's improper supervised release term could be credited to a future sentence of increased imprisonment). We recognize that precisely how to reformulate the sentence vis-à-vis time already served is an open question but allowing Pryer "to escape a proper sentence because the district court chose [probation] in lieu of [a longer term in] prison would merely compound judicial error." *Martin*, 363 F.3d at 41 (citing *Bozza v. United States*, 330 U.S. 160, 166–67 (1947) ("The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.")).

categories of violations committed in just two months. A second violation report filed August 15, 2023 detailed an additional five categories of violations committed while still in revocation proceedings for the violations reported in April. Pryer has shown zero respect for this Court's authority and has given no indication that her prior sentence in any way deterred her from future criminal conduct. The Court can and should consider these § 3553(a) factors in light of these additional developments when crafting its new sentence.

## IV.     Conclusion

For the reasons set forth above, the government respectfully requests that the Court deny Pryer's Motion to Terminate and instead resentence Pryer under the § 3553(a) factors and in light of her post-sentencing conduct.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ Hutton Marshall
J. Hutton Marshall
DC Bar No. 1721890
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20005
(202) 809-2166
Joseph.hutton.marshall@usdoj.gov